**BURSOR & FISHER, P.A.**
Sarah N. Wescott (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| L.W.A., individually and on behalf of all others similarly situated,<br><br>                                          Plaintiff,<br><br>       v.<br><br> LINKEDIN CORPORATION,<br><br>                                          Defendant. | Case No. 5:24-cv-08436-EJD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO COMPEL ARBITRATION**<br><br>Date: April 3, 2025<br>Time: 9:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Edward J. Davila |

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................3

I. LEGAL STANDARDS ......................................................................................................3

    A. The Federal Arbitration Act ..................................................................................3

    B. Mutual Assent Requires Conspicuous Notice .......................................................4

    C. Nonsignatories Generally Cannot Enforce Arbitration Agreements ......................4

II. PLAINTIFF'S CLAIMS ARISE FROM HER CONTRACTUAL RELATIONSHIP WITH LINKEDIN .......................................................................................5

III. LINKEDIN HAS FAILED TO SATISFY ITS BURDEN OF SHOWING THAT PLAINTIFF AGREED TO ARBITRATE ................................................................6

IV. EQUITY DOES NOT PERMIT LINKEDIN TO ENFORCE NOOM'S ARBITRATION PROVISION ............................................................................................8

    A. Plaintiff's Claims Are Not Intimately Founded In Or Intertwined With Noom's Terms ..............................................................................................9

    B. Plaintiff Does Not Allege Concerted Misconduct Between Noom And LinkedIn Bound Up With The Noom Terms ................................................12

CONCLUSION ............................................................................................................................13

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berman v. Freedom Fin'l Network*,
   30 F.4th 849 (9th Cir. 2022) ................................................................................................ 4, 6

*Chiron Corp. v. Ortho Diagnostic Sys.*,
   207 F.3d 1126 (9th Cir. 2000) .................................................................................................. 3

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ...................................................................................... 4

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................................................... 6

*Ellington v. Eclipse Recreational Vehicles*,
   2022 WL 72351 (9th Cir. Jan. 7, 2022) .................................................................................. 10

*Faucett v. Move, Inc.*,
   2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) ............................................................... 4, 8, 10

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) .................................................................................................................. 3

*Goldman v. KPMG, LLP*,
   173 Cal. App. 4th 209 (2009) ................................................................................................ 12

*Guisinger v. Keystone RV Co.*,
   2024 WL 3384211 (9th Cir. July 12, 2024) ............................................................................. 9

*Hansen v. LMB Mortg. Servs., Inc.*,
   1 F.4th 667 (9th Cir. 2021) ....................................................................................................... 3

*Hunt v. Meta Platforms, Inc.*,
   735 F. Supp. 3d 1133, 1138 (N.D. Cal. 2024) ....................................................................... 11

*In re Meta Pixel Tax Filing Cases*,
   724 F. Supp. 3d 987 (N.D. Cal. 2024) ...................................................................................... 6

*Jackson v. Amazon.com, Inc.*,
   65 F.4th 1093 (9th Cir. 2023) ........................................................................................ 3, 4, 10

*Javier v. Assurance IQ, LLC*,
   2022 WL 1744107 (9th Cir. May 31, 2022) ......................................................................... 6, 9

*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005 (9th Cir. 2024) ............................................................................................. 7, 8

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .................................................................................................. 12

*Mattson Tech., Inc. v. Applied Materials, Inc.*,
   96 Cal. App. 5th 1149 (2023) ................................................................................................... 12

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) .................................................................................................... 8

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................................................ 3, 7, 8

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ....................................................................................................... 5

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ....................................................................................................... 7

*Perry-Hudson v. Twilio, Inc.*,
   2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) ................................................................... 2, 10, 13

*Salas v. Universal Credit Services, LLC*,
   2019 WL 1242448 (S.D. Cal. Mar. 18, 2019) ............................................................................ 16

*Sanford v. MemberWorks, Inc.*,
   483 F.3d 956 (9th Cir. 2007) ....................................................................................................... 5

*Sellers v. JustAnswer LLC*,
   73 Cal. App. 5th 444 (2021) ................................................................................................... 5, 9

*Sellers v. JustAnswer LLC*,
   73 Cal. App. 5th 444 (2021) ....................................................................................................... 9

*Smith v. Google, LLC*,
   722 F. Supp. 3d 990 (N.D. Cal. 2024) ......................................................................... 8, 9, 12, 13

*Soltero v. Precise Distribution, Inc.*,
   102 Cal. App. 5th 887 (2024) ................................................................................................. 4, 8

*Stover v. Experience Holdings, Inc.*,
   978 F.3d 1082 (9th Cir. 2020) ................................................................................................. 4, 6

*Uptown Drug Co. v. CVS Caremark Corp.*,
   962 F. Supp. 2d 1172 (N.D. Cal. 2013) .................................................................................... 11

*Waymo LLC v. Uber Techs., Inc.*,
   252 F. Supp. 3d 934 (N.D. Cal.) ............................................................................................... 11

**STATUTES**

9 U.S.C. § 4 .................................................................................................................................. 3

**INTRODUCTION**

Defendant LinkedIn Corporation ("Defendant" or "LinkedIn") operates one of world's largest social media networks. However, LinkedIn's largest revenue source is generated from online targeted advertising. To fuel its profits, LinkedIn created the LinkedIn Insight Tag to harvest data from its customers online activity. While online advertising is ordinarily permissible, LinkedIn has flouted privacy laws and elected to intentionally intercept private and protected information. Such acts also violate LinkedIn's own user agreement and the representations it makes to its account holders regarding the use of its advertising technology.

Plaintiff L.W.A. ("Plaintiff") is a LinkedIn account holder. When creating an account with LinkedIn, Plaintiff agreed to LinkedIn's user agreement. *See* Class Action Complaint (ECF No. 1-1) ("Compl."), ¶¶ 6, 26. The terms contained within LinkedIn's user agreement govern disputes between LinkedIn and its account holders, including disputes related to LinkedIn's use and operation of the LinkedIn Insight Tag. *Id.* LinkedIn expressly warrants to its account holders, including Plaintiff, that it "will only collect and process data about you where we have a lawful basis." *Id.* ¶ 29. LinkedIn's user agreement does not contain an arbitration agreement.

In or around December 2023, Plaintiff completed a weight loss survey on a website owned and operated by Noom. *Id.* ¶ 7. Notably, Plaintiff was not confronted with a privacy policy from Noom prior to completing the survey on Noom's website. While completing survey, Plaintiff answered several questions that concerned private medical information, including but not limited to, her pregnancy status (*id.* Figures 2-3), the medications she's taking (*id.* Figures 4-5), and other medical conditions or symptoms she may be experiencing. *Id.* Figures 6-11. "Unbeknownst to Plaintiff, LinkedIn was tracking her private activity on Noom's website using the LinkedIn Insight Tag." *Id.* ¶ 7. Once LinkedIn intercepted this data, it then matched it "to the user's LinkedIn profile," (*id.* ¶ 21) which contains a user's "first and last name, place of work, contact information, and other personal details." *Id.* ¶ 24.

Plaintiff's lawsuit does not arise from violations of Noom's privacy policy, but rather, LinkedIn's. *See id.* ¶ 3 ("LinkedIn failed to receive consent for these interceptions, and thereby engaged in conduct that expressly contravened its own terms and representations."). LinkedIn

moves to compel arbitration, arguing that it should be entitled to enforce Noom's customer agreement with Plaintiff, instead of its own. *See* LinkedIn's Motion to Compel Arbitration (ECF No. 28) ("Motion"). Such gamesmanship should not be permitted. Indeed, if LinkedIn desired to resolve disputes between itself and its account holders it could have included an arbitration agreement in its own user agreement. It chose not to.

LinkedIn's Motion should be denied for two additional and independent reasons.

**First**, LinkedIn's argument that Plaintiff agreed to an arbitration agreement with Noom is without merit. In fact, the evidence provided by LinkedIn establishes the opposite. Even assuming, *arguendo*, that Plaintiff created an account on Noom's platform, Noom would not have provided Plaintiff with conspicuous notice of its terms of service. *See* Declaration of Norman Petty ("Petty Decl."), ¶ 13. Courts routinely find agreements presented in this manner to be unenforceable.

**Second**, LinkedIn, a nonsignatory, is not entitled to enforce Noom's terms of service under the doctrine of equitable estoppel. LinkedIn's reliance on *Perry-Hudson v. Twilio, Inc.* is misguided. In *Perry-Hudson*, the plaintiff did not have a contractual relationship with Twilio. *See* 2024 WL 4933332 (N.D. Cal. Dec. 2, 2024). Instead, the plaintiff's claims arose solely from his interaction and relationship with a third party (Keeps), for whom the defendant (Twilio) was a service provider. *Id.* at 1. Therefore, the court held that the plaintiff's "claims are intimately founded in and intertwined with his agreement with Keeps." *Id.* at *2. Conversely, here Plaintiff's claims arise from her agreement with LinkedIn, not any purported agreement with Noom. In fact, Noom's privacy policy is wholly irrelevant to Plaintiff's claims here. Even if the Court finds that Noom provides consumers with conspicuous notice of its terms of service and privacy policy (it does not), such terms are not presented to consumers until *after* they complete the survey on Noom's website. In other words, the earliest consumers, including Plaintiff, would be aware of Noom's privacy practices would not be until *after* all of their private information had already been intercepted. The only privacy policy implicated by Plaintiff's claims is LinkedIn's.

LinkedIn is not entitled to hide behind an agreement it is not a party to. Accordingly, LinkedIn's Motion should be denied.

# ARGUMENT

## I. LEGAL STANDARDS

### A. The Federal Arbitration Act

Section 4 of the FAA addresses motions to compel arbitration. 9 U.S.C. § 4. Pursuant to § 4, a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration, may petition [a court with jurisdiction] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* If the court determines that the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.* The party alleged to be in default of the agreement may demand a jury trial. *Id.*

In examining a motion to compel arbitration, a court must determine: (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When determining whether a valid and enforceable arbitration agreement exists, federal courts should apply "ordinary state-law principles that govern the formation of contracts . . . ." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[M]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The party seeking to compel arbitration has the burden of showing mutual manifestation of assent. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023).

The summary judgment standard applies to motions to compel arbitration. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021). In ruling on such a motion, a court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007). "Although mutual assent is generally a question of fact, whether a certain set of facts is sufficient to establish a contract is a question of law." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023). A court can only grant or deny a motion to compel arbitration if there are no genuine disputes of material fact as to whether an arbitration agreement was formed.

### B. Mutual Assent Requires Conspicuous Notice

California law "is clear" that a person "is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Berman v. Freedom Fin'l Network*, 30 F.4th 849, 864 (9th Cir. 2022). To establish notice sufficient to give rise to mutual assent for the valid formation of an internet contract, a website operator must establish the contractual terms were presented to the consumer in a way that made it clear "the consumer was assenting to *those very terms*[.]" *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021) (emphasis added).

"Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. Thus, the onus is "on website owners to put users on notice of the terms to which they wish to bind consumers as consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound. *Jackson*, 65 F.4th at 1100 (cleaned up); *see also Stover v. Experience Holdings*, Inc., 978 F.3d 1082, 1086 (9th Cir. 2020) ("[T]he party alleging the existence of a contract [] has the burden to prove each element of a valid contract—including mutual assent."). Accordingly, when a hyperlink to an agreement is "not conspicuous enough to put [plaintiffs] on inquiry notice," then the agreement is not binding. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019).

### C. Nonsignatories Generally Cannot Enforce Arbitration Agreements

"Although there is a strong public policy in favor of contractual arbitration, there is no policy compelling anyone to accept arbitration of controversies which they have not agreed to arbitrate. Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions." *Soltero v. Precise Distribution, Inc.*, 102 Cal. App. 5th 887, 322 (2024). Those exceptions are to be "narrowly construed." *Faucett v. Move, Inc.*, 2024 WL 2106727, *5 (C.D. Cal. Apr. 22, 2024).

## II. PLAINTIFF'S CLAIMS ARISE FROM HER CONTRACTUAL RELATIONSHIP WITH LINKEDIN

LinkedIn argues that it should be able to enforce third-party Noom's arbitration agreement because Plaintiff's claims "arise out of Plaintiff's alleged use of the Noom Services." Motion at 7. That is wrong.

One of the most basic principles of contract law provides that parties are bound by the agreements they enter into. These same fundamental principles apply equally to contracts formed online. *Oberstein*, 60 F.4th at 513. Plaintiff is a LinkedIn account holder. Compl. ¶ 6. When creating an account on LinkedIn, Plaintiff agreed to LinkedIn's user agreement, which governs disputes between Plaintiff and LinkedIn. *Id.* ("You and LinkedIn agree that the laws of the State of California, U.S.A….shall exclusively govern any dispute relating to this Contract and/or the Services."). Notably, "LinkedIn's 'Services' includes those related to its software code known as the LinkedIn Insight Tag." *Id.* LinkedIn expressly warrants to its account holders, including Plaintiff, that it "will only collect and process data about you where we have a lawful basis." *Id.* ¶ 29. LinkedIn's user agreement does not contain an arbitration agreement. Instead, it provides that "You and LinkedIn both agree that all claims and disputes can be litigated only in the federal or state courts in Santa Clara County, USA, and you and LinkedIn each agree to personal jurisdiction in those courts." *See* Declaration of Spencer McManus, Ex. A (ECF No. 27-1). LinkedIn largely ignores its user agreement in the present Motion. That is intentional. Unhappy with its own dispute resolution terms, LinkedIn seeks to enforce Noom's. However, Plaintiff's claims do not arise from Noom's services, but rather from LinkedIn's.

Plaintiff alleges that LinkedIn violated the terms of *its own* user agreement intentionally:

> LinkedIn, at all times, knew that the incorporation of its software onto the Noom Website would result in its interception of confidential medical information. Defendant LinkedIn, as the creator of its software and the LinkedIn Insight Tag, knew that it intercepted users' interactions on the Website that incorporated its technology. Defendant LinkedIn is well aware of the dangers of incorporating such technology on websites that offer medical and health services but continues to do so because of the value of the data it intercepts.

Compl. ¶ 8. This is significant, as courts within this District have allowed wiretapping claims to proceed against social media companies related to the misuse of their own advertising technology. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075–80 (N.D. Cal. 2023) (denying motion to dismiss wiretapping claims where Meta's pixel technology intercepted health data from online websites); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1002–05 (N.D. Cal. 2024) (denying motion to dismiss wiretapping claim where Meta's pixel technology intercepted tax filing data from online websites). This case is no different. Moreover, LinkedIn's user agreement is the *only* agreement implicated by Plaintiff's lawsuit. The earliest consumers (including Plaintiff) could have been confronted with Noom's privacy policy was not until *after* they completed the survey on Noom's website. In other words, even if Noom's privacy policy was sufficient to put consumers on notice as to its privacy practices (it was not), consumers would not have been aware of—nor could they have agreed to such disclosures of their private information—until it was already too late. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("Here, [plaintiff] has sufficiently alleged that he did not provide express prior consent to [defendant's] wiretapping of his communications[.]").

### III.  LINKEDIN HAS FAILED TO SATISFY ITS BURDEN OF SHOWING THAT PLAINTIFF AGREED TO ARBITRATE

Even if the Court were to consider Noom's terms of service (it should not), such terms are still inapplicable because LinkedIn has failed to establish that Plaintiff ever agreed to them. "[T]he threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate." *Sellers*, 73 Cal. App. 5th at 463. To form a contract under California law, "the parties must manifest their mutual assent to the terms of the agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022); *see also Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) ("[T]he party alleging the existence of a contract [] has the burden to prove each element of a valid contract—including mutual assent."). "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory." *Berman*, 30 F.4th at 856. "In California, internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by

1  the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh v.*
2  *Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Sellers*, 73 Cal. App. 5th at
3  463).  A browsewrap agreement exists when "an internet user accepts a website's terms of use
4  merely by browsing the site." *Id.*  However, "the conspicuousness and placement of the 'Terms of
5  Use' hyperlink, other notices given to users of the terms of use, and the website's general design all
6  contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap
7  agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  Browsewrap
8  agreements are typically found to be unenforceable because they fail to provide consumers with
9  inquiry notice of their existence.  *See id.* at 1178 (acknowledging "court's traditional reluctance to
10  enforce browsewrap agreements against individual consumers").

In support of its Motion, LinkedIn claims that Plaintiff created a Noom account on September 20, 2024.  Petty Decl. ¶ 7.  LinkedIn provides an exemplar of the Noom App Sign Up Page:



LinkedIn represents that "the interface…depict[ed] is the same in all material respects as what a user would have seen in September 2024." *Id.* ¶ 11.  Even accepting this to be true, LinkedIn has failed to establish that Plaintiff ever agreed to be bound by Noom's terms by creating an account.  As demonstrated above, Noom's terms of use are barely visible and provided at the bottom of the screen, intentionally placed far away from any buttons a consumer would interact with during the account creation process.  Courts consistently refuse to enforce such agreements. *See Nguyen*, 763 F.3d at 1178-79; *Keebaugh v. Warner Bros. Ent. Inc*., 100 F.4th 1005, 1014 (9th Cir. 2024) ("Court's have consistently held [browsewrap] agreement[s] to be unenforceable, as individual do not have inquiry notice.").

## IV.   EQUITY DOES NOT PERMIT LINKEDIN TO ENFORCE NOOM'S ARBITRATION PROVISION

LinkedIn argues it is entitled to enforce Noom's terms of service as a nonsignatory under California's doctrine of equitable estoppel. Motion at 7.  That is wrong.

"[G]enerally only signatories to an arbitration agreement are obligated to submit to binding arbitration." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  However, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." *Soltero*, 102 Cal. App. 5th at 893.

Courts narrowly construe the equitable estoppel doctrine. *Faucett*, 2024 WL 2106727, at *5.  There are two circumstances where a court may estop a party to an arbitration agreement from bringing claims against a nonparty in court:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Smith v. Google, LLC*, 722 F. Supp. 3d 990, 994 (N.D. Cal. 2024) ("*Smith*").  Neither circumstance is present here.

### A. Plaintiff's Claims Are Not Intimately Founded In Or Intertwined With Noom's Terms

LinkedIn argues that "[e]ach of Plaintiff's three privacy claims requires her to prove that Noom did not disclose that it may share her information with third parties like LinkedIn." Motion at 9. In making this argument, LinkedIn demonstrates a fundamental misunderstanding of both the facts and the law underlying Plaintiff's claims.

As a threshold matter, and as discussed *supra*, the earliest Plaintiff would have been aware of Noom's privacy policy was not until *after* LinkedIn already intercepted her private health data, in violation of LinkedIn's own user agreement. LinkedIn's arguments concerning Noom's terms are therefore irrelevant because consumers cannot retroactively consent to the interception of their private and protected data. *See Javier*, 2022 WL 1744107, at *2.

LinkedIn's arguments fail for additional reasons. In *Smith*, Google sought to bind the plaintiff to an arbitration agreement to which Google was not a party. *Smith*, 722 F. Supp. 3d at 992. In rejecting Google's argument, the court found that the plaintiffs asserted only statutory claims, "none of which relies directly on the terms of any written agreement." *Id.* at 994. The court also rejected Google's argument that it was entitled to equitable estoppel because "plaintiffs could not have used [the service at issue] without assenting to H&R Block's agreement and the arbitration provision it included . . . ." *Id*. The court held that "it is not enough for an agreement to be one but-for causal link in a chain of events leading to the circumstances underlying a claim; the claim itself must stem from or be intertwined with the agreement." *Id.*; *see also Guisinger v. Keystone RV Co.*, 2024 WL 3384211, at *1 (9th Cir. July 12, 2024) (noting "[t]he California Courts of Appeal have long rejected but-for causation as the relevant standard for" equitable estoppel).

As in *Smith*, Plaintiff's claims do not rely directly on Noom's terms of service or privacy policy. Further, Plaintiff does not allege any part of Noom's terms satisfy any element of her claims. At best, Noom's terms may be "one but-for causal link in a chain in a chain of events leading to the circumstances underlying a claim." *Smith*, 722 F. Supp. 3d at 994. That does not allow LinkedIn to invoke the equitable estoppel doctrine.

1    More importantly, <u>Plaintiff's claims do not depend on Noom's terms</u>.  Plaintiff's suit arises
2    out of LinkedIn's violation of LinkedIn's own terms.  Accordingly, Plaintiff asserts statutory
3    claims that would not change in the absence of Noom's terms.  As such, the claims are not
4    dependent on, or otherwise intertwined, with the Terms. *See Ellington v. Eclipse Recreational*
5    *Vehicles*, 2022 WL 72351, at *1 (9th Cir. Jan. 7, 2022) ("Even if Ellington had no purchase
6    agreement with [the signatory to the agreement], his implied warranty claims against [the
7    nonsignatory defendant] would remain unchanged. Accordingly, the district court correctly denied
8    the motion to compel arbitration"); *Jackson*, 65 F.4th at 1102-03 ("[A]lthough membership in
9    Jackson's proposed class would require participation in the Amazon Flex program, the controversy
10   in this case is ultimately not about any characteristics or conduct of class members, but whether
11   Amazon is indeed liable for wiretapping and invasion of privacy.").  Further, Plaintiff "does not
12   seek to simultaneously enforce" Noom's terms against LinkedIn "while attempting to avoid the
13   arbitration provision." *Faucett*, 2024 WL 2106727, at *5. To the contrary, Plaintiff is seeking to
14   enforce her own user agreement with LinkedIn.  This marks a principal distinction between this
15   case and the authority relied upon by LinkedIn.

16   For example, in *Perry-Hudson*, the plaintiff brought claims related to the unlawful
17   disclosure of private information when purchasing hair loss medication on the Keeps website.
18   2024 WL 4933332, at *1.  Keeps shared this private information with a third party, Twilio, in
19   alleged violation of Keeps' terms and conditions and privacy policy.  *Id.* at *2 (finding that
20   "Keeps's Privacy Policy discusses disclosure of personal information to third party vendors.").
21   Notably, the plaintiff did not have any relationship with Twilio outside of his relationship with
22   Keeps.  Accordingly, the only terms that the plaintiff's claims could arise from were Keeps.  Here,
23   by contrast, Plaintiff is a LinkedIn user and agreed to LinkedIn's user agreement when creating an
24   account on LinkedIn. Compl. ¶ 6. Her agreement with LinkedIn governs her relationship with
25   LinkedIn and LinkedIn's services, including LinkedIn's use of the LinkedIn Insight Tag.  *Id.*
26   Accordingly, Plaintiff's claims do not arise from Noom's terms, but rather LinkedIn's.  *See id.* ¶ 3
27   ("LinkedIn failed to receive consent for these interceptions, and thereby engaged in conduct that
28   expressly contravened its own terms and representations.").  Additionally, the earliest Plaintiff *may*

have been presented with Noom's terms was not until *after* LinkedIn intercepted her private and protected data. *Perry-Hudson* is therefore inapplicable.

In *Hunt v. Meta Platforms, Inc.*, the court allowed the defendants to invoke the equitable estoppel doctrine where the plaintiff's claims were "founded in or bound up with the terms [at issue]." 735 F. Supp. 3d 1133, 1138 (N.D. Cal. 2024) (internal citations omitted). However, *Hunt* concerned a plaintiff who brought claims against H&R Block, Google, and Meta "for allegedly violating the Racketeer Influenced and Corrupt Organizations (RICO) Act." *Id.* The court previously found H&R Block's arbitration agreement was enforceable, and compelled plaintiff's claims against it to arbitration. *Id.* at 1135. The court granted Google and Meta's motions to compel arbitration "because the claims allege fraud arising from the H&R Block agreements as one of the elements of [plaintiff's] RICO claims." *Id.* at 1138. Plaintiff does not make similar allegations here. The *only* terms that could possibly be implicated in the present action are LinkedIn's own user agreement.

LinkedIn's reliance on *Uptown Drug Co. v. CVS Caremark Corp.* is similarly misplaced. There, the court found that defendants who were not signatories to an agreement containing an arbitration provision were entitled to equitable estoppel on a single claim where: (1) the plaintiff had to show that a defendant's alleged misconduct exceeded the scope of the relevant agreement; and (2) "the complaint [was] replete with implicit references to that contract." *Uptown Drug Co.*, 962 F. Supp. 2d 1172, 1185 (N.D. Cal. 2013). Importantly, the court found the plaintiffs' other claim was not intimately intertwined with the relevant agreement because the claim did not have "any significant foundation in [the relevant] provision or in the Agreement as a whole. *Id*. at 1186. Unlike *Uptown Drug Co.*, Plaintiff does not rely on Noom's terms or privacy policy in asserting her claims. LinkedIn's reliance is therefore misplaced. *See Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 940 (N.D. Cal.), *aff'd,* 870 F.3d 1342 (Fed. Cir. 2017) ("Waymo need not rely on the arbitration agreements in question to prove the improper means element of its misappropriation claims here. Thus, unlike the plaintiff in *Uptown*, Waymo is not equitably estopped to resist arbitration of those claims against defendants with whom it had no arbitration agreement.");

*Mattson Tech., Inc. v. Applied Materials, Inc.*, 96 Cal. App. 5th 1149, 1157 (2023) (distinguishing *Uptown* when the plaintiffs' claims did not rely on the contract with the signatory defendant).

### B. Plaintiff Does Not Allege Concerted Misconduct Between Noom And LinkedIn Bound Up With The Noom Terms

LinkedIn argues that it should be allowed to enforce Noom's terms because "the legality of th[e] alleged joint conduct [between Noom and LinkedIn] hinges on the disclosures in Noom's Privacy Policy and Cookie Policy." Motion at 11. That is wrong.

"The doctrine of equitable estoppel applies where a signatory raises allegations of substantially interdependent and concerted misconduct by both a nonsignatory and a signatory." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1132 (9th Cir. 2013). However, "California state contract law does not allow a nonsignatory to enforce an arbitration agreement based upon a mere allegation of collusion or interdependent misconduct between a signatory and nonsignatory" unless "the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause. Id*. (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219 (2009)) (emphasis in original).

As discussed throughout, Plaintiff's claims against LinkedIn are not "founded in and inextricably bound up with obligations imposed by" the Noom terms. *See Kramer*, 705 F.3d at 1132. Moreover, Plaintiff does not allege "substantially interdependent and concerted misconduct" between Noom and LinkedIn. *See id.*

*Smith* is again instructive. In *Smith*, the plaintiff alleged statutory claims relating to the disclosure of his sensitive tax information from the H&R Block Website. 722 F. Supp. 3d at 992. Google, the defendant, was a nonsignatory to the H&R Block Online Services Agreement but sought to enforce the agreement's arbitration provision under the doctrine of equitable estoppel. *Id*. Despite the complaint containing specific allegations that H&R Block "was responsible for configuring" the data-disclosing tool and "made the decision to transmit data to Google," the court rejected Google's argument that it was entitled to equitable estoppel:

> These allegations generally seem to show H&R Block acting independently from Google—making its own decisions regarding the use and implementation of Google's tools without further

>   involvement from Google. And to the extent Google acted interdependently or in concert with H&R Block, there is no indication that Google interacted differently with H&R Block than with any other third parties that use its tracking tools. Indeed, in its motion to dismiss, Google emphasizes that its tracking tools are "products available in the market" to developers, that it is web developers who "are in control of how to implement Google Analytics on their websites," and that plaintiffs do not allege "that Google instructed the Websites to transmit to Google the purported financial data—or any other type of data at all." If Google interacted with H&R Block no differently from how it interacted with any other user of its off-the-shelf tracking tools, it is difficult to see how Google's actions could be 'founded in' or 'intimately connected with' the specific agreement that H&R Block allegedly had with its *own* users.

*Id*. at 995 (emphasis in original).

The same circumstances that precluded the application of the equitable estoppel doctrine in *Smith* are present here and warrant the same result. That is, to the extent Plaintiff alleges interdependent conduct between LinkedIn and Noom, Plaintiff has made no allegations that LinkedIn "interacted differently with [Noom] than any other third parties that use its tracking tools." *See id*. Further, Plaintiff does not allege that LinkedIn instructed Noom on how to implement the LinkedIn Insight Tag or that LinkedIn was in control of how to implement the LinkedIn Insight Tag on the Noom's website. *See id*. As in *Smith*, this Court should reject the plea to apply the equitable estoppel doctrine.

The authority relied upon by Defendant is again distinguishable, as, unlike here, the plaintiffs in those cases did not have a direct contractual relationship with the defendants they were bringing claims against. *See Perry-Hudson*, 2024 WL 4933332, at *1; *Salas v. Universal Credit Services, LLC*, 2019 WL 1242448 at *1 (S.D. Cal. Mar. 18, 2019) (same).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits LinkedIn's Motion should be denied.

Dated: February 10, 2025          **BURSOR & FISHER, P.A**.

By: ___/s/ Sarah N. Westcot___
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Counsel for Plaintiff*