UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| L. W. A.,<br><br>        Plaintiff,<br><br>    v.<br><br>LINKEDIN CORPORATION,<br><br>        Defendant. | Case No.  5:24-cv-08436-EJD<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; TERMINATING AS MOOT MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 25, 28 |

Plaintiff L.W.A. ("Plaintiff") brings this case against Defendant LinkedIn Corporation ("LinkedIn") alleging that LinkedIn intercepted her private information from Noom's website through LinkedIn's embedded "Insight Tag" in violation of various California privacy laws. Compl., ECF No. 1-1.  Before the Court is LinkedIn's motion to compel arbitration under the doctrine of equitable estoppel pursuant to an arbitration clause in Noom's terms of service ("Arbitration Agreement"), as well as LinkedIn's separate motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6).  Mot. to Compel Arb., ECF No. 28; Mot. to Dismiss, ECF No. 25. Both motions are fully briefed.  Opp'n to Mot. to Compel Arb., ECF No. 34; Reply in Supp. Of Mot. to Compel Arb., ECF No. 36; Opp'n to Mot. to Dismiss, ECF No. 33; Reply in Supp. of Mot. to Dismiss, ECF No. 37.

The Court held a hearing on June 5, 2025, and heard oral arguments from both parties. ECF No. 46.  For the reasons explained below, the Court **GRANTS** LinkedIn's motion to compel arbitration and **TERMINATES AS MOOT** the motion to dismiss.

## I.  BACKGROUND

The Court need only discuss those facts relevant to LinkedIn's motion to compel arbitration. Plaintiff alleges that she completed a survey on Noom's website to develop a weight loss plan around December 2023, where she "disclosed sensitive information, including confidential medical information." Compl. ¶ 7. Noom has no record of Plaintiff completing a survey in December 2023 with the email Plaintiff identified. Petty Decl. ¶ 6, ECF No. 31-3. However, Noom does have records of Plaintiff engaging with its services on September 20, 2024, when she downloaded the Noom App on an iPad and created an account. *Id.* ¶ 7.

When a user downloads the Noom App on an Apple Device, a welcome page appears that prompts users to either "Get started" or "Login." *Id.* ¶ 11. When clicking "Get started," users encounter the following screen to sign up for Noom's services:



Petty Decl. ¶ 13.

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
2

1  The screen shows a page with a white background that directs users to create an account
2 either by entering their email and password or by signing up through the user's Apple or Facebook
3 accounts. *Id.* At the bottom of the screen in grey font is the following notice: "By proceeding,
4 you acknowledge that you have accepted our **Terms of Use** and **Privacy Policy**." *Id.* ¶ 12
5 (emphasis in original). The words "Terms of Use" and "Privacy Policy" are bolded and
6 underlined and contain hyperlinks. *Id.* When a user clicks on the "Terms of Use" link, they are
7 directed to the Terms and Conditions of Use from Noom's website, which appears as such:



*Id.* ¶ 15.

In the third paragraph in bold font and all capital letters is the following notice regarding the Arbitration Agreement:

> Section 12 (dispute resolution) contains provisions that govern how to resolve disputes between you and us. Unless you opt out of the arbitration agreement (as defined in section 12) within thirty (30) days in accordance with section 12.6 (opt out): (1) you will only be permitted to pursue disputes or claims and seek relief against us on an individual basis, not as a plaintiff or class member in any class or representative action or proceeding, and you waive your right to participate in a class action lawsuit or class-wide arbitration; and (2) you are waiving your right to pursue disputes or claims and seek relief in a court of law and to have a jury trial. In arbitration, there is less discovery and appellate review than in court.

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

3

1  Petty Decl., Ex. A (bold and capital emphasis removed from original).

2  Noom is not a defendant in this action. Plaintiff brings claims only against LinkedIn for

3  the unauthorized collection of her data from the survey on Noom's website. LinkedIn argues that

4  the Arbitration Clause in Noom's Terms of Use should equitably estop Plaintiff from bringing her

5  claims against LinkedIn outside of arbitration.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration agreements are subject to generally applicable state law contract defenses. *Lim v. TForce Logistics*, LLC, 8 F.4th 992, 999 (9th Cir. 2021). In determining whether to compel a party to arbitrate, the court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal quotation marks and citation omitted). Once it is established that a valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

Parties seeking to avoid arbitration are subject to the same standards applicable to parties opposing summary judgment under Federal Rule of Civil Procedure 56. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (finding summary judgment standard is appropriate because order compelling arbitration "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate"). Therefore, the moving party bears the initial burden of informing the court of the basis for the motion. *Curry v. Matividad Med. Ctr.*, No. 5:11-CV-04662-EJD, 2013 WL 2338110, at *1 (N.D. Cal. May 28,

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
4

1   2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the moving party meets this

2   initial burden, the burden then shifts to the opposing party to present specific facts showing that

3   there is a genuine issue for trial.  *Id.* at *2.

### III.  DISCUSSION

LinkedIn argues that Plaintiff must arbitrate her claims against LinkedIn pursuant to the terms of the Arbitration Agreement under the doctrine of equitable estoppel.  The Court will examine in turn: (1) the validity of the Arbitration Agreement; (2) whether Plaintiff's claims fall within the scope of the Arbitration Agreement; and (3) whether LinkedIn, as a non-signatory, may enforce the Arbitration Agreement through equitable estoppel.

### A.  Validity of Agreement

The parties agree that California law applies.  Opp'n 4; Reply 3.  To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023).  The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014), and with equal force to contracts formed online, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022).

In the online context, internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms" and generally fall on a spectrum ranging from "clickwrap" to "browsewrap."  *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 16 (Cal. 2021)); *see also Berman*, 30 F.4th at 856.  "[C]lickwrap" agreements are agreements in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed.  *Berman*, 30 F.4th at 856.  Browsewrap agreements, on the other end of the spectrum, are agreements in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website.  *Id.*  In the middle of the spectrum are sign-in wrap

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
5

1    agreements, also known as "modified clickwrap agreement[s]," whereby a user is "notified of the

2    existence of the website's terms of use and advise[d] that by making some type of affirmative act,

3    often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, No. 22-

4    CV-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023).

5        The Terms of Use here is classified as a modified sign-in wrap agreement. *See id.* Under

6    California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if

7    "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will

8    be bound; and (2) the consumer takes some action, such as clicking a button or checking a box,

9    that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856.

### 1. Reasonably Conspicuous Notice of the Terms

Courts generally analyze two factors to determine whether notice of the terms was reasonable: (1) the context of the transaction, and (2) the visual placement of the notice. *See Keebaugh*, 100 F.4th at 1019.

#### a. Context of the Transaction

When evaluating sign-in wrap agreements, courts generally evaluate the full context of the transaction, including whether the transaction contemplated "a continuing, forward-looking relationship" governed by terms and conditions. *Sellers*, 289 Cal. Rptr. 3d at 16. Neither party raises arguments regarding the context of the transaction. However, the Court observes that, by creating an account with the goal of developing a weight loss plan, it would be reasonable to assume that users contemplate a continuing, forward-looking relationship while they complete the weight loss plan facilitated by Noom.

#### b. Visual Placement of the Notice

Next, courts examine the visual placement of the notice. Notice is generally reasonably conspicuous if it is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it," and if there is a hyperlink, the "the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857. "A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
6

apart' from the surrounding text." *Sellers*, 289 Cal. Rptr. 3d at 29. Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage." *Berman*, 30 F.4th at 857. For example, in *Berman*, the Ninth Circuit found that two lines of small gray font that stated, "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy" failed to put the plaintiff on notice of the arbitration provision in part because the underlined terms "appeared in the same gray font as the rest of the sentence, rather than in blue, the color typically used to signify the presence of a hyperlink." *Berman*, 30 F.4th at 856–57. In other cases, courts have also found that underlined text is sufficient "when viewed in the context of the overall design and content of the webpage." *Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (finding reasonably conspicuous notice on an underlined hyperlink where (1) the hyperlink appeared "directly below" the action button, (2) the hyperlink was set off by "ample white spacing" and "primarily surrounded by text no larger than the notice itself," and (3) the "general design of the webpage," was "relatively uncluttered and ha[d] a muted, and essentially uniform, color scheme").

Here, the Court finds that the visual placement of the Terms of Use hyperlink provides sufficient notice for several reasons. First, the page is free from clutter. There are simple boxes to input an email and password, or sign up through Apple or Facebook accounts, followed by significant white space surrounding the Terms of Use notice. Second, the hyperlinks are not buried in text or otherwise placed in a confusing location—the sentence containing the Terms of Use notice is the only text in the white space at the bottom of the page. Third, though the font is grey, it appears clearly in contrast against the white background. Finally, while the hyperlinks are not marked in blue, they are in bold and underlined, making them stand apart from the other text in the sentence. In the context of the clean and simple format of the page, the Court finds that a reasonably prudent internet user would see the notice and understand that the phrase "Terms of Use" was a hyperlink to the terms containing the Arbitration Clause. *See Ghazizadeh v. Coursera*,

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
7

1   Inc., 737 F. Supp. 3d 911 (N.D. Cal. 2024) (collecting cases).

2       Plaintiff's only argument in response is that she had already submitted private information
3   in a survey on Noom's website, which was simultaneously sent to LinkedIn through the Insight
4   Tag, before she encountered the sign up screen: "[The] terms are not presented to consumers until
5   after they complete the survey on Noom's website. In other words, the earliest consumers,
6   including Plaintiff, would be aware of Noom's privacy practices would not be until after all of
7   their private information had already been intercepted." Opp'n 2.  However, Plaintiff failed to
8   support this contention with evidence, i.e., a declaration attesting to the fact that users are not
9   presented with the terms until the end of the survey.  Plaintiff's unsupported argument therefore
10  fails, particularly considering LinkedIn's evidence showing no record of Plaintiff completing a
11  survey on Noom's website prior to creating an account.  *See Hansen*, 1 F.4th at 670 (holding that
12  the party seeking to avoid arbitration is subject to the same standards applicable to parties
13  opposing Rule 56 summary judgment).

### 2. Unambiguous Manifestation of Assent

15  Next, LinkedIn must show that Plaintiff unambiguously manifested her assent to be bound
16  by the Terms of Use.  LinkedIn has presented evidence showing that Plaintiff downloaded the
17  Noom App on an iPad and created an account to use Noom's services on September 20, 2024.
18  Petty Decl. ¶ 7.  Upon opening the App for the first time, to create an account, Plaintiff was
19  presented with Noom's Sign-Up Page.  *Id.* ¶¶ 10–12.  The Sign-Up Page prompted Plaintiff to
20  enter her email address and a password and click "Continue," or to "Sign up with Apple" or "Sign
21  up with Facebook."  *Id.* ¶¶ 12–13.  Beneath those buttons, Noom informed Plaintiff that, "By
22  proceeding you acknowledge that you have accepted our Terms of Use and Privacy Policy."  *Id.*
23  ¶¶ 12–13.  In other words, when Plaintiff successfully created her account on September 20, 2024,
24  she agreed to Noom's Terms and Privacy Policy.  Plaintiff does not dispute this.  The Court
25  therefore finds LinkedIn produced evidence sufficient to show a manifestation of assent.

### B. Scope

27  LinkedIn argues that Plaintiff's claims are within the scope of the Arbitration Agreement

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
8

because they arise out of Plaintiff's use of Noom's website.  Mot. 2 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).  Plaintiff does not offer a response or otherwise argue that the conduct alleged falls outside the scope of the Arbitration Agreement.  Accordingly, the Court finds LinkedIn has met its burden to show that Plaintiff's claims fall within the scope of the Arbitration Agreement.

### C. Equitable Estoppel

Finding the Arbitration Agreement between Plaintiff and Noom to be valid, the Court now examines whether LinkedIn, a non-signatory, has the right to enforce the Arbitration Agreement against Plaintiff under the doctrine of equitable estoppel.

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).  California's doctrine of equitable estoppel permits a nonsignatory defendant to compel arbitration of a signatory plaintiff's claims either when (1) "the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract;" or (2) "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 & n.5 (9th Cir. 2024) (internal quotation marks omitted) (cleaned up).

Relevant here, one element Plaintiff will have to prove to succeed on any of its claims against LinkedIn is lack of consent.  Compl. ¶¶ 3, 7, 42, 61, 74, 79; *see Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 (N.D. Cal. 2021) (collecting cases showing that consent defeats claims for common-law privacy violations and wiretapping under ECPA and CIPA).  This is an issue that has been briefed in LinkedIn's separate motion to dismiss under Rule 12(b)(6), where LinkedIn argues in part that Plaintiff consented to LinkedIn's receipt of her information because she agreed to Noom's Privacy Policy and Cookie Policy.  The Privacy Policy discloses that "[Noom] and [its] partners also use cookies, web beacons, mobile analytics and advertising device IDs, and similar

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
9

1   technologies" to collect personal data, including "the pages [users] visit, the links [users] click on,
2   and similar usage information, identifiers, and device information" gathered "across different
3   websites, apps, or online services." Petty Decl., Ex. B. The Cookie Policy also provides that one
4   method by which Noom collects information on its services is through the use of "pixels or web
5   beacons," which allow Noom "and [its] partners [to] collect data, including usage data, identifiers,
6   and device information." Petty Decl. Ex. D. The Cookie Policy further discloses that Noom and
7   its partners may use cookies to "collect personal data (such as the pages [users] visit, the links
8   [users] click on, and similar usage information, identifiers, and device information) . . . including
9   personal data about [users'] online activities over time and across different websites or online
10  services." *Id.*

11  The Court need not examine the merits of LinkedIn's arguments on this point, but it finds
12  that resolution of this issue will be necessary to decide this case. Two recent Northern District
13  cases are instructive. In *Perry-Hudson v. Twilio, Inc.*, No. 24-CV-03741-VC, 2024 WL 4933332,
14  at *2 (N.D. Cal. Dec. 2, 2024), the plaintiff sued Twilio alleging that Twilio unlawfully received
15  his personal information through tracking tools it installed on Keeps's website. *Id.* The court
16  allowed Twilio to compel individual arbitration under the plaintiff's user agreement with Keeps
17  because the claims were founded in and intertwined with Keeps's terms of service—in order to
18  determine whether Twilio's conduct was unlawful, the court would need to examine whether the
19  plaintiff consented to the disclosure of this under Keeps' terms of service. *Id.* Similarly, in *Hunt*
20  *v. Meta Platforms, Inc.*, 735 F. Supp. 3d 1133, 1137 (N.D. Cal. 2024), the plaintiff sued Google,
21  Meta, and H&R Block alleging that H&R Block transmitted sensitive tax information to Meta and
22  Google through their tracking tools on H&R Block's website. *Id.* The court permitted Google
23  and Meta to compel arbitration under the plaintiff's agreement with H&R Block because the
24  plaintiff's claims against Google and Meta depended in part on his whether his agreement with
25  H&R Block was fraudulent. *Id.* So too here, the court would need to examine whether Plaintiff
26  consented to her data being shared to LinkedIn in her agreement with Noom. Indeed, the Court
27  dismissed a related case on this very basis in a concurrently filed order. *See* Case No. 24-cv-7374.
28  Case No.: 5:24-cv-08436-EJD
    ORDER GRANTING MOTION TO COMPEL ARBITRATION
    10

United States District Court
Northern District of California

1    Though Plaintiff raises arguments attempting to distinguish *Perry-Hudson* and *Hunt*, Plaintiff does not dispute the dispositive fact that the Court must ultimately interpret the disclosures in Noom's Privacy Policy and Cookie Policy to decide her claims. Accordingly, the Court finds Plaintiff's claims are intimately founded in and intertwined with her agreement with Noom, and LinkedIn may enforce the Arbitration Agreement through the doctrine of equitable estoppel.

**IV.  CONCLUSION**

Based on the foregoing, the Court **GRANTS** Defendants' motion to compel arbitration. This case is **STAYED** pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). The motion to dismiss, ECF No. 25, is **TERMINATED** as moot.

The parties shall notify the Court within 10 days of reaching a final resolution in the pending arbitration.

**IT IS SO ORDERED.**

Dated: September 30, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-08436-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
11